**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| MARISOL NUNEZ, ) | |
| ) | CASE NO. 1:12-cv-01931 |
| Plaintiff, ) | |
| ) | |
| v. ) | MAGISTRATE JUDGE GREG WHITE |
| ) | |
| MICHAEL J. ASTRUE, ) | |
|   Commissioner of Social Security ) | **MEMORANDUM OPINION & ORDER** |
| ) | |
| Defendant. ) | |

Plaintiff Marisol Nunez ("Nunez") challenges the final decision of the Commissioner of Social Security, Michael J. Astrue ("Commissioner"), denying Nunez's claim for a Period of Disability ("POD"), Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI") under Title II and XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 416(i), 423, 1381 *et seq*. This matter is before the Court pursuant to 42 U.S.C. § 405(g) and the consent of the parties entered under the authority of 28 U.S.C. § 636(c)(2).

For the reasons set forth below, the final decision of the Commissioner is AFFIRMED in part, VACATED in part, and the case REMANDED.

### I. Procedural History

On August 19, 2009, Nunez filed an application for POD, DIB, and SSI alleging a

disability onset date of March 31, 2005. Her application was denied both initially and upon reconsideration. Nunez timely requested an administrative hearing.

On July 15, 2011, an Administrative Law Judge ("ALJ") held a hearing during which Nunez, represented by counsel, and an impartial vocational expert ("VE") testified. On September 1, 2011, the ALJ found Nunez was able to perform a significant number of jobs in the national economy and, therefore, was not disabled. The ALJ's decision became final when the Appeals Council denied further review.

## II. Evidence

*Personal and Vocational Evidence*

Age thirty-nine at the time of her alleged onset date, Nunez is a "younger" person under social security regulations. *See* 20 C.F.R. §§ 404.1563(c) & 416.963(c). Nunez has a sixth grade education and past relevant work as a furniture upholsterer, cleaner, solderer, and babysitter. (Tr. 23, 172.)

*Hearing Testimony*

At the hearing, Nunez testified to the following:

- Her physical impairments include heart problems, stress, an ulcer, gall bladder removal, and problems with her bones. After complaining that everything fell out of her hands, she was told by her doctor that she might have Lupus. However, testing had not been performed to confirm such a diagnosis due to her lack of Medicaid. (Tr. 388-89.)

- She experiences pain in her legs that sometimes causes her to fall down. (Tr. 389.)

- She has trouble hearing due to water in her ear stemming from a sinus problem. She was told to see a specialist. (Tr. 389.)

- Her triglyceride levels are high, and she has had two stents surgically implanted. (Tr. 390.)

2

- She sews and cleans, but has to sit down at times because her heart rate speeds up. She tires easily. (Tr. 390-91.)

- She does her own grocery shopping, but never alone. Her daughter carries the groceries. (Tr. 391-92.)

- Her diabetes is "awful," and spikes up and down. (Tr. 392.)

- She has received psychiatric treatment, but does not remember her diagnosis other than she has a "phobia." She does not like being in a closed room or standing in lines, as she feels trapped. (Tr. 392-93.)

- She has crying spells twice weekly. (Tr. 393.)

- On a typical day, she wakes up, eats breakfast, and tries to "do a little bit." She rests during the day, but never naps. She lies down and watches television. (Tr. 394.)

- She experiences pain in her stomach and hands, heartburn, and gas. (Tr. 395.)

- She can walk for twenty to thirty minutes before needing to sit down. (Tr. 395.) Walking longer causes shortness of breath and foot pain. (Tr. 395-96.)

- She does not lift anything. She evens needs help with lifting her hair. (Tr. 396.)

The ALJ posed the following hypothetical question to the VE:

[T]he hypothetical worker is 46 years old, is illiterate in English, no currently relevant vocational training, exertionally this hypothetical worker can do a range of light work and specifically what I mean by that is hypothetical worker can sit, stand or walk for six hours each during an eight hour day, lift carry, push or pull 10 pounds frequently, 20 pounds occasionally. Hypothetical worker is further limited in that she must avoid concentrated exposure to fumes, odors, dust, gases, and poorly ventilated areas and must also avoid concentrated exposure to temperature extremes, by which I mean temperatures in excess of 85 degrees or less than 32 degree Fahrenheit. Hypothetical worker is further limited to simple, routine, low stress tasks ... where there's no requirements for arbitration, negotiation, confrontation, directing the work of others or being responsible for the safety of others.

(Tr. 407-08.)

The VE testified that such an individual could not perform any of Nunez's past relevant

3

work. (Tr. 408.) She further testified that none of her skills from those jobs were transferable, except perhaps for industrial sewing. (Tr. 408-09.) The VE, however, identified the following three jobs as examples of work that such an individual could perform: cafeteria attendant, cleaning/housekeeping, and sales attendant. (Tr. 409-10.) After Nunez's counsel altered the hypothetical to sedentary work rather than light work, the VE testified that all three jobs she identified would be eliminated and that no jobs would be available. (Tr. 410-11.) Nunez's counsel also asked the VE to consider the hypothetical at the light exertional level with the added restriction of only superficial interaction with co-workers and no interaction with the public. (Tr. 412.) The VE testified that such an individual could still perform the cleaning/housekeeping position, but not the other two jobs. *Id*. In response to another question by counsel, the VE opined that an individual who missed two days a month due to medical emergencies or symptoms would probably not be employable. *Id*.

### III. Standard for Disability

In order to establish entitlement to DIB under the Act, a claimant must be insured at the time of disability and must prove an inability to engage "in substantial gainful activity by reason of any medically determinable physical or mental impairment," or combination of impairments, that can be expected to "result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.130, 404.315 and 404.1505(a).[1]

---

[1] The entire process entails a five-step analysis as follows: First, the claimant must not be engaged in "substantial gainful activity." Second, the claimant must suffer from a "severe impairment." A "severe impairment" is one which "significantly limits ... physical or mental ability to do basic work activities." Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment, or combination of impairments, meets a required listing under 20 C.F.R. § 404, Subpt. P, App. 1, the claimant is presumed to be disabled regardless of age, education or work

A claimant is entitled to a POD only if: (1) she had a disability; (2) she was insured when she became disabled; and (3) she filed while she was disabled or within twelve months of the date the disability ended. 42 U.S.C. § 416(i)(2)(E); 20 C.F.R. § 404.320.

Nunez was insured on her alleged disability onset date, March 31, 2005. (Tr. 18.) However, March 31, 2005 is also Nunez's date last insured ("DLI"). Thus, in order to be entitled to POD and DIB, Nunez must establish a continuous twelve month period of disability commencing no later than her DLI. Any discontinuity in the twelve month period precludes an entitlement to benefits. *See Mullis v. Bowen,* 861 F.2d 991, 994 (6th Cir. 1988); *Henry v. Gardner*, 381 F. 2d 191, 195 (6th Cir. 1967).

A disabled claimant may also be entitled to receive SSI benefits. 20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524 (6th Cir. 1981). To receive SSI benefits, a claimant must meet certain income and resource limitations. 20 C.F.R. §§ 416.1100 and 416.1201.

### IV. Summary of Commissioner's Decision

The ALJ found Nunez established medically determinable, severe impairments, due to "coronary artery disease after coronary artery bypass graft and stent, and depression and anxiety." (Tr. 18.) However, her impairments, either singularly or in combination, did not meet or equal one listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. *Id*. Nunez was found incapable of performing her past relevant work, but was determined to have a Residual Functional Capacity

---

experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d)(2000). Fourth, if the claimant's impairment does not prevent the performance of past relevant work, the claimant is not disabled. For the fifth and final step, even though the claimant's impairment does prevent performance of past relevant work, if other work exists in the national economy that can be performed, the claimant is not disabled. *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

("RFC") for a limited range of light work. (Tr. 20, 23.) The ALJ then used the Medical Vocational Guidelines ("the grid") as a framework and VE testimony to determine that Nunez was not disabled. (24-25.)

### V. Standard of Review

This Court's review is limited to determining whether there is substantial evidence in the record to support the ALJ's findings of fact and whether the correct legal standards were applied. *See Elam v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003) ("decision must be affirmed if the administrative law judge's findings and inferences are reasonably drawn from the record or supported by substantial evidence, even if that evidence could support a contrary decision."); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983). Substantial evidence has been defined as "[e]vidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966); *see also Richardson v. Perales*, 402 U.S. 389 (1971).

The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. *Buxton v. Halter*, 246 F.3d 762, 772-3 (6th Cir. 2001) (*citing Mullen*, 800 F.2d 535, 545 (6th Cir. 1986)); *see also Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999) ("Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached. *See Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997).") This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference. *Mullen*, 800 F.2d at 545 (*citing*

6

*Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

In addition to considering whether the Commissioner's decision was supported by substantial evidence, the Court must determine whether proper legal standards were applied. Failure of the Commissioner to apply the correct legal standards as promulgated by the regulations is grounds for reversal. *See, e.g.,White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006) ("Even if supported by substantial evidence, however, a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.")

Finally, a district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (*quoting Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir.1996); *accord Shrader v. Astrue*, 2012 WL 5383120 (E.D. Mich. Nov. 1, 2012) ("If relevant evidence is not mentioned, the Court cannot determine if it was discounted or merely overlooked."); *McHugh v. Astrue*, 2011 WL 6130824 (S.D. Ohio Nov. 15, 2011); *Gilliam v. Astrue*, 2010 WL 2837260 (E.D. Tenn. July 19, 2010); *Hook v. Astrue*, 2010 WL 2929562 (N.D. Ohio July 9, 2010).

## VI. Analysis

Nunez asserts that the ALJ erred by: (1) failing to properly evaluate the opinion of her treating cardiologist, Jayah Gupat-Rakhit, M.D., and (2) failing to include manipulative limitations in the hypothetical question posed to the VE. (ECF No. 15.) At the outset, the Court

7

notes that neither of these assignments of error relate to Nunez's application for POD and DIB. The opinion of Nunez's cardiologist, Dr. Gupat-Rakhit, which Nunez asserts was improperly rejected, was offered in February of 2011, almost six years after Nunez's DLI of March 31, 2005. (Tr. 18, 247-48.) Nunez does not challenge the DLI determination. Based on the parties' recitation of the medical record, it is unclear whether Dr. Gupat-Rakhit even treated Nunez prior to 2009. With respect to the second assignment of error, Nunez does not reference any evidence supporting manipulative restrictions prior to 2010. (ECF No. 15 at 12.) As such, the ALJ's decision denying Nunez's application for POD and DIB is affirmed. The Court will proceed to analyze Nunez's assignments of error, as a claim for SSI commencing after the DLI may, nonetheless, be viable.

*Treating Physician*

Nunez asserts that the ALJ erred by rejecting the opinions of her treating cardiologist, Dr. Gupat-Rakhit. (ECF No. 15 at 7-14.)

Under Social Security regulations, the opinion of a treating physician is entitled to controlling weight if such opinion (1) "is well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) "is not inconsistent with the other substantial evidence in [the] case record." *Meece v. Barnhart*, 192 F. App'x 456, 560 (6th Cir. 2006); 20 C.F.R. § 404.1527(c)(2). "[A] finding that a treating source medical opinion . . . is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to 'controlling weight,' not that the opinion should be rejected." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399 (6th Cir. 2009) (*quoting* Soc. Sec. Rul. 96-2p, 1996 SSR LEXIS 9 at *9); *Meece*, 192 Fed. App'x at 460-61 (Even if not entitled to controlling weight, the opinion of a treating

8

physician is generally entitled to more weight than other medical opinions.) Furthermore, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527 and 416.927." *Blakley*, 581 F.3d at 408.[2] Nonetheless, the opinion of a treating physician must be based on sufficient medical data, and upon detailed clinical and diagnostic test evidence. *See Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985); *Bogle v. Sullivan*, 998 F.2d 342, 347-48 (6th Cir. 1993); *Blakley*, 581 F.3d at 406 ("It is an error to give an opinion controlling weight simply because it is the opinion of a treating source if it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent with other substantial evidence in the case record.") (*quoting* SSR 96-2p).

On February 22, 2011, Dr. Gupta-Rakhit completed mental and physical RFC assessments.[3] (Tr, 247-50.) She opined that during an eight-hour work day, Nunez could lift less than five pounds occasionally due to coronary artery disease ("CAD"), cardiac arrhythmia, status post stenting of the left anterior descending artery (LAD), and "being swelled up w/ lupus." (Tr. 247.) She further opined that Nunez could stand and/or walk less than one hour per day because Nunez gets tachycardia with exercise and needs cardiac rehab. *Id*. The Assessment

---

[2] Pursuant to 20 C.F.R. §§ 404.1527(c) & 416.927(c), when not assigning controlling weight to a treating physician's opinion, the Commissioner should consider the length of the relationship and frequency of examination, the nature and extent of the treatment relationship, how well-supported the opinion is by medical signs and laboratory findings, its consistency with the record as a whole, the treating source's specialization, the source's familiarity with the Social Security program and understanding of its evidentiary requirements, and the extent to which the source is familiar with other information in the case record relevant to the decision.

[3] These assessments were completed one day after Dr. Gupta-Rakhit performed a stent placement procedure on February 21, 2011. (Tr. 243.)

9

provided that sitting was not affected, but Nunez could rarely crouch, kneel, or crawl, though she could occasionally climb, balance and stoop. *Id*. Dr. Rakhit-Gupta indicated that Nunez could frequently perform fine manipulation, occasionally reach, handle, feel, and perform gross manipulation, and rarely/never push/pull. (Tr. 248.) Numerous environmental restrictions were reported, but she did not require additional breaks. *Id*. Nunez had not been prescribed a cane, walker, brace, TENS unit, or breathing machine, but experienced moderate pain. *Id*. Dr. Rakhit-Gupta felt Nunez needed a sit/stand option. *Id*. As for mental restrictions, the Assessment provided that Nunez had fair ability to perform most vocational-related tasks, but poor ability to maintain attention and concentration for extended periods of two hour segments. (Tr. 249-50.)

> With respect to the above opinion, the ALJ found as follows:
>
> The undersigned gives some weight to Dr. Rakhit's opinion, but only to the extent that it is consistent with the residual functional capacity stated above. The undersigned notes that Dr. Rakhit's opinion was provided just two days after the claimant's stent placement and the record does not support these limitations prior to this procedure or that these limitations are permanent in nature. Moreover, Dr. Rakhit based the claimant's functional capacity on a diagnosis of arrhythmia, which diagnosis is not found in the evidence before me.[4]

(Tr. 20-21.)

Nunez argues that because the ultimate RFC finding for light work without a sit/stand option was so dissimilar to Dr. Rakhit's opinion, the ALJ necessarily rejected significant portions of the February 2011 assessment. (ECF No. 15 at 9.) The Court agrees. However, the question remains whether the ALJ gave good reasons for rejecting significant portions of the

---

[4] The ALJ gave "full weight" to Dr. Rakhit's opinion as it related to Nunez's mental limitations. (Tr. 21.)

opinion. The Court finds that the reasons given were sufficient.[5] Nunez ignores the most compelling reason given in the decision, the ALJ's specific, albeit briefly discussed, statement that Nunez had a stent placement two days earlier. (Tr. 21.) Implicit in the ALJ's decision is his concern that the Assessment was merely a snapshot of Nunez's limitations at that point in time. Notably, nowhere does Dr. Rakhit-Gupta's Assessment suggest that the limitations had lasted or would last twelve months. (Tr. 247-48.) In another opinion from within this district, it was found that because a treating physician's opinion did not specify that the claimant could not work for at least the requisite 12 months, any error in the treating physician rule was *de minimis* and did not require remand. *Mickens v. Astrue*, 2008 WL 5501145 at *3 (N.D.Ohio Sept.26, 2008) (M.J.Limbert); *cf. Bailey v. Comm'r of Soc. Sec.*, 1:12-CV-50, 2013 WL 1340135 at *5 (W.D. Mich. Mar. 29, 2013) (finding that good reasons were given for giving little weight to a treating treating physician's opinion where that physician acknowledged that claimant's impairments were not permanent and had neither lasted 12 months nor were expected to last for 12 months.); *Heintz v. Comm'r of Soc. Sec.*, 1:11-CV-263, 2012 WL 4867430 at *4 (W.D. Mich. Oct. 15, 2012) (finding no violation of treating physician rule where treating psychiatrist did not expect impairment to last 12 months).

Furthermore, while rejecting a treating physician's opinion where the assessment form does not indicate the duration of the limitations may not always be *per se* reasonable, it was reasonable given the facts and circumstances of this case. The ALJ specifically noted that prior to Nunez's stent placement the day before Dr. Rakhit-Gupta's assessment, nothing in the record

---

[5] However, the Court will deal with the manipulative restrictions separately in the ensuing section.

supports this level of limitation. (Tr. 21.) While Nunez argues that the record demonstrates that she had a history of heart problems well before the February 21, 2011 stent placement, she provides no evidence of standing/walking limitations consistent with Dr. Rakhit-Gupta's extremely restrictive post-stent placement assessment. (ECF No. 15 at 10.) Finally, the ALJ also noted that Dr. Rakhit-Gupta's assessment was, at least in part, based on a diagnosis not to be found anywhere in the record, namely cardiac arrhythmia. (Tr. 21.) Nunez takes issue with this as a reason for rejection because it was only one of several factors given by Dr. Rakhit-Gupta in support of the assessment. (ECF No. 15 at 9-10.) However, Nunez cites no evidence demonstrating that the ALJ was wrong about the lack of an arrhythmia diagnosis.

Given that nothing in Dr. Rakhit-Gupta's assessment that would cause one to believe the limitations therein could be expected to last up to twelve months, the ALJ did not violate the treating physician rule by failing to incorporate such limitations in the ultimate RFC assessment.

*Manipulative Limitations*

Nunez also argues that ALJ's finding, that a substantial number of jobs existed in the economy that she could perform, was not supported by substantial evidence. (ECF No. 15 at 11-12.) Specifically, Nunez contends that the hypothetical question posed to the VE was inaccurate because the ALJ omitted manipulative limitations.[6] *Id*.

A hypothetical question must precisely and comprehensively set forth every physical and mental impairment that the ALJ accepts as true and significant. *See Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). Where the hypothetical question is supported

---

[6] As none of the hypothetical questions posed to the VE included manipulative restrictions, it is unclear what, if any, impact they would have had on the availability of jobs. (Tr. 407-412.)

by evidence in the record, it need not reflect unsubstantiated allegations by the claimant. *See Blacha v. Sec'y of Health & Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990).  In fashioning a hypothetical question to be posed to a VE, the ALJ is required to incorporate only those limitations that he accepts as credible. *Griffeth v. Comm'r of Soc. Sec.*, 217 Fed. Appx. 425, 429 (6th Cir. 2007) (*citing Casey v. Sec'y of HHS*, 987 F.2d 1230, 1235 (6th Cir. 1993)).  However, where the ALJ relies upon a hypothetical question that fails to adequately account for all of the claimant's limitations, it follows that a finding of disability is not based on substantial evidence. *See Newkirk v. Shalala*, 25 F.3d 316, 317 (6th Cir. 1994).

In treatment records from Nurse Practitioner Natalia Parkanzky, Nunez was positive for joint pain in her hands and wrists, and positive for tingling in her hands and feet.  (Tr. 258-59, 264-65.)  The evidence of record supporting the existence of manipulative limitations stems primarily from Nunez's own subjective complaints and the February 2011 assessment of Dr. Rakhit-Gupta discussed above.  The record reflects that rheumatoid factor and antinuclear antibody (ANA) testing were part of Nunez's treatment plan, though it does not appear testing ever occurred.[7]  (Tr. 260.)  Nunez's citation to her complaints does not automatically establish that she had manipulative limitations resulting in more than a minimal effect on her work-related activities.  Unlike the standing/walking restrictions contained in Dr. Rakhit-Gupta's assessment which had no support in the record, it is unclear why the ALJ rejected the manipulative limitations that were ascribed to Nunez.  Furthermore, while the ALJ found that Nunez's alleged

---

[7] ANA tests can aid in the diagnosis of lupus and other autoimmune diseases. *See* American College of Rheumatology website at:
www.rheumatology.org/Practice/Clinical/Patients/Diseases_And_Conditions/Antinuclear Antibodies_(ANA)/

symptoms were not credible to the extent that they are inconsistent with the RFC, the credibility discussion does not address her alleged limited ability to manipulate. (Tr. 22-23.)

The Commissioner asserts that the manipulative limitations found by Dr. Rakhit-Gupta are "speculative" and points to a finding that Nunez had normal range of motion in both of her wrists. (ECF No. 17 at 11, *citing* Tr. 259.) Notably, the same treatment notes from that date indicate that Nunez was positive for pain and tingling in her hands and wrists, and reported numbness and dropping items. (Tr. 258-59.) The Commissioner relies on an isolated treatment note rather than the ALJ's actual analysis. This Court has previously noted, "arguments [crafted by defense counsel] are of no consequence, as it is the opinion given by an administrative agency rather than counsel's '*post hoc* rationale' that is under the Court's consideration." *See, e.g., Bable v. Astrue*, 2007 U.S. Dist. LEXIS 83635, 27-28 (N.D. Ohio, Oct. 31, 2007) (*citing NLRB v. Ky. River Cmty. Care, Inc.*, 532 U.S. 706, 715, n.1, (2001)); *Sarchet*, 78 F.3d at 307 ("We cannot uphold a decision by an administrative agency … if, while there is enough evidence in the record to support the decision, the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result.")

The ALJ is not required to ascribe any significant weight to Dr. Rakhit-Gupta's opinion as it relates to Nunez's purported manipulative limitations *if* good reasons are given for rejecting them. The decision acknowledges that Dr. Rakhit-Gupta's assessment contained manipulative limitations, but it is unclear why the ALJ rejected them. While it does not appear that Dr. Rakhit-Gupta specifically treated Nunez for any hand or wrist related symptoms, the ALJ did not offer that as a reason for discounting his opinion. Nor did the ALJ offer the lack of any formal diagnosis that could reasonably be expected to result in manipulative limitations as the basis for

14

rejecting them. Finally, while Nunez's manipulative limitations appear to be based primarily on her self-reported limitations, the ALJ did not explain why these particular allegations were not credible.

Because it is unclear whether the inclusion of certain manipulative limitations would have altered the VE's testimony as to the availability of jobs, the Court cannot find that the ALJ's failure to address said limitations was harmless. As such, Nunez's second assignment of error is well taken.

### VII. Decision

For the foregoing reasons, the Court finds the decision of the Commissioner is (1) supported by substantial evidence with respect to Nunez's claim for POD and DIB, but (2) not supported by substantial evidence with respect to Nunez's claim for SSI. Accordingly, the decision of the Commissioner is AFFIRMED in part, VACATED in part, and the case REMANDED pursuant to 42 U.S.C. § 405(g) sentence four, for further proceedings consistent with this opinion.

IT IS SO ORDERED.

/s/ Greg White
U.S. Magistrate Judge

Date: May 7, 2013